1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONISON RAISOR,                          No.  2:16-cv-01500-CKD

12                  Plaintiff,

13          v.                                 ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18          Plaintiff Donison Raisor seeks judicial review of a final decision by the Commissioner of

19   Social Security ("Commissioner") denying his application for Supplemental Security Income

20   ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary

21   judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is

22   based upon legal error and is not supported by substantial evidence in the record.  (See ECF Nos.

23   14, 14-1.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary

24   judgment.  (ECF No. 18.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 20.)

25          After carefully considering the record and the parties' briefing, the court DENIES

26   plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

                                               1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.   BACKGROUND

Plaintiff was born in 1964, graduated high school and completed two semesters of college with a 3.25 GPA.[2]  (Administrative Transcript ("AT") 68, 276, 404.)  On February 7, 2014, plaintiff applied for SSI, alleging that his disability began on July 27, 2012.  (AT 37.)  Plaintiff claimed that he was disabled due to major depressive disorder, anxiety, and greater trochanteric bursitis.  (AT 302.)  After plaintiff's application was denied initially and on reconsideration, an ALJ conducted an initial hearing on January 16, 2015 (AT 62–82), followed  by a supplemental hearing on October 20, 2015 (AT 83–118).  The ALJ issued a decision dated January 19, 2016, determining that plaintiff had not been under a disability as defined in the Act, from February 7, 2014, the date the application was filed, through the date of the ALJ's decision.  (AT 37–55.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 5, 2016.  (AT 1–3.)  Plaintiff filed this action on July 1, 2016, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly weighed opinion evidence in the record; (2) whether the ALJ failed to make a proper step three determination; (3) whether the ALJ improperly discounted plaintiff's credibility; and (4) whether the ALJ erred in his step five determination.[3]

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."  Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947).  At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.  It is proper for us to read the paragraph . . . and opinion, and draw inferences . . . if those inferences are there to be drawn."  Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV.  DISCUSSION

A.  Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4]  At step one, the ALJ concluded that plaintiff had not engaged in

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the

3

substantial gainful activity since February 7, 2014, the date of his application. (AT 39.) At step

two, the ALJ determined that plaintiff had the following severe impairments: left greater

trochanteric bursitis, bilateral sacroiliac joint sclerosis, depressive disorder, social phobia, and

panic disorder with agoraphobia. (Id.) However, at step three the ALJ concluded that plaintiff

did not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 11.)

Next, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that he

could perform light work as defined in 20 C.F.R. § 416.967(b), except that he:

> Can lift and/or carry twenty pounds occasionally and ten pounds
> frequently. He can frequently climb ramps and stairs but can only
> occasionally climb ladders, ropes, or scaffolds. He can
> occasionally crawl. He can frequently balance, stoop, kneel, and
> crouch. The claimant can work in an environment that requires
> few workplace changes and no more than occasional interaction
> with the public.

(AT 41.) Then, at step four, the ALJ determined that plaintiff had no past relevant work. (AT

53.) At step five, he found that, in light of plaintiff's age, education, work experience, RFC, and

the vocational expert's ("VE") testimony, there were jobs that existed in significant numbers in

the national economy that plaintiff could have performed. (Id.) Thus, the ALJ concluded that

plaintiff had not been under a disability, as defined in the Act, since February 7, 2014, the date

the application was filed. (AT 54.)

////

////

claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the
claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any
other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential
evaluation process proceeds to step five. Id.

4

B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.    *Whether the ALJ improperly weighed opinion evidence in the record*

Plaintiff argues that the ALJ gave too much weight to the opinions of the reviewing medical providers and not enough weight to the opinions of the treating and examining medical providers.  (See ECF No. 14-1 at 18–27.)

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

Essentially, plaintiff argues that his interpretation of the evidence should be adopted.  This argument is not well taken.  The ALJ sufficiently explained his reasoning regarding how he weighed each opinion, and supported his decision with substantial evidence in the record.  (<u>See</u> AT 41–53.)  First, the ALJ outlined plaintiff's subjective complaints as well as his daily activities.  (AT 41–42.)  Then, the ALJ detailed plaintiff's mental health history (AT 42–49) and weighed each relevant opinion (AT 49–51).  Next, the ALJ summarized plaintiff's physical health history (AT 51–52) and weighed each relevant opinion (AT 53).  To the extent that the record is ambiguous and open to interpretation, the ALJ fulfilled his duty and this court may not disturb the decision based on plaintiff's proffered alternative interpretation of the evidence.  <u>See</u> <u>Edlund</u>, 253 F.3d at 1156; <u>Tommasetti</u>, 533 F.3d at 1038.

### i.     **Drs. Malek, Kahn, and Cribari – treating psychiatrists**

Plaintiff argues that the "ALJ failed to provide specific, legitimate reasons supported by substantial evidence in the record for assigning some or little weight to" plaintiff's treating psychiatrists.  (ECF No. 14-1 at 18.)  In particular, plaintiff asserts that the ALJ's conclusion that these opinions are inconsistent with the record is unsupported.[6]  (<u>Id.</u>)

Drs. Malek, Kahn, and Cribari each provided a medical source statement, assessing plaintiff's limitations due to his mental impairments.  (<u>See</u> AT 612–16, 674–77, 817–18.)  These opinions were contradicted by the opinions of the state agency reviewing psychologists, Drs. Moura and Koretzky (discussed below).  Therefore, at most, the ALJ was required to provide "specific and legitimate" reasons for rejecting these opinions.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.

However, at the same time, the opinions of Drs. Malek, Kahn, and Cribari are conclusory, consisting of check-box diagnoses and lacking any detailed explanation of the physicians' reasoning.  (<u>See</u> AT 612–16, 674–77, 817–18.)  The Ninth Circuit has held that an "ALJ may

---

[6] Additionally, plaintiff erroneously argues that "the ALJ did not evaluate Dr. Cribari's August 3, 2015 medical source statement."  (ECF No. 14-1 at 19.)  The ALJ explicitly considered that opinion, observing that "[h]er opinion was almost identical to that rendered by Dr. Khan."  (AT 47.)

"permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the basis of their conclusions." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted). Moreover, "the regulations give more weight to opinions that are explained than to those that are not." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(3)). Thus, the ALJ had grounds to reject these opinions as conclusory. Still, he provided detailed reasons for rejecting each opinion.

Dr. Malek opined that plaintiff had a good ability to understand, remember, and carry out simple instructions; a poor ability to interact appropriately with the public; and fair abilities in all other listed categories. (AT 615.) The ALJ rejected Dr. Malek's opinion in part because it lacked sufficiently defined limitations.

> Dr. Malek opined the claimant had fair abilities to perform work from a mental standpoint. However, his definition of "fair" as stated on the form he prepared indicated that the degree or extent of limitation in the areas rated as fair required more explanation and there was none [provided by Dr. Malek].

(AT 49.) This is an accurate description of Dr. Malek's opinion. (See AT 615.) Without clarification as to what Dr. Malek meant when opining that plaintiff had "fair" abilities, his opinion could not reasonably assist the ALJ in making a disability determination.

Regarding Dr. Malek's opinion that plaintiff had a poor ability to interact with the public, the ALJ found this to be inconsistent with the evidence in the record. (AT 49.) First, the ALJ pointed out that plaintiff attended community college in a major requiring the study of more than simple concepts. (Id.) This is supported by substantial evidence in the record, demonstrating that plaintiff studied Mechatronics for two semesters, and while failing one class, he received numerous "A" grades and maintained a 3.25 GPA, while enrolled. (See AT 71, 102–03, 404.) Second, the ALJ pointed out that plaintiff had interacted with other students at school. (AT 49.) Plaintiff indeed testified that he had interacted with students and professors while enrolled, and he did not report any difficulty in interacting with them. (See AT 110.)

Drs. Khan and Cribari opined that plaintiff had marked mental impairments in many areas associated with work. (See AT 674–77, 817–18.) The ALJ gave these opinions little weight, as well, citing the same inconsistencies between the record and these opinions, as he did with Dr.

7

Malek's opinion. (AT 50.) In addition, the ALJ pointed out that plaintiff demonstrated mental resiliency, contradicting the opined limitations, when plaintiff persisted in accessing county resources while he was homeless. (See AT 50.) This is supported by the record that demonstrates even though plaintiff continued to report depression and anxiety, he was able to access places to sleep through the county and meals at churches. (See AT 627–29.) Plaintiff even obtained a place to stay, where he lived alone at the time of the last hearing. (AT 91.)

Moreover, the ALJ relied upon other portions of the record, inconsistent with the check-box opinions of plaintiff's psychiatrists:

> From September 2012 to August 2014, mental health treatment notes indicate the claimant was treated conservatively with medications which were adjusted and or changed depending on his clinical presentation. He also participated in individual and group therapy. Records during this time indicate the claimant's depression improved but that he had ongoing anxiety and panic attacks. However, the records show that despite his reports of panic attacks, he reported only requiring need for the anxiety-reducing medication, Klonopin, twice per month.
>
> [. . .]
>
> A [May 16, 2014] cognitive exam by his treating source [Arudra Bodepudi, MD] indicated cognition was intact despite his complaints of inability to concentrate.

(AT 48.) All of these observations are supported by substantial evidence in the record. (See AT 442, 446–47, 450, 456, 605, 895–921.) For example, in 2012, plaintiff reported that his depression was improved with medications, and Nurse Practitioner Deborah Johnson noted that his depression was in partial remission. (AT 456.) In 2013 and 2014, plaintiff also indicated that medication was helping his depression. (AT 442, 450.)

Thus, the ALJ provided several specific and legitimate reasons, supported by substantial evidence, when giving little weight to the check-box opinions of Drs. Malek, Khan, and Cribari.

ii.      **Dr. Martin – examining psychologist**

According to plaintiff, "[t]he ALJ failed to provide clear and convincing reasons for rejecting the uncontradicted opinion of Dr. Martin, an examining physician." (ECF No. 14-1 at 23.) In February of 2015, Dr. Martin met with plaintiff once and performed a comprehensive psychological evaluation, during which plaintiff demonstrated borderline intelligence. (AT 751–

57.)  Dr. Martin opined that plaintiff was markedly and moderately limited by his mental impairments in many areas related to functioning in the workplace.  (AT 757.)

The ALJ assigned little weight to Dr. Martin's opinion, finding it inconsistent with the record as a whole.  (AT 51.)

> Despite that the claimant obtained scores on intelligence testing [with Dr. Martin] indicating he was of borderline intellectual functioning and low memory functioning, the records do not support the finding.  As discussed, he obtained "A" grades in college level mechatronics courses.  This evidence alone calls into question the evaluation by Dr. Martin.  The claimant's extensive array of activities also do not support the claimant is borderline in his cognitive functioning.  He lives alone and requires no assistance to maintain a household.  He can handle finances.  He drives to school, appointments, and college.  While he was homeless for a time, he obtained help from the county and was able to obtain a housing voucher.  He eventually entered into an agreement with a friend to stay in the friend's camper in the friend's yard.  Such activities are not consistent with someone who is borderline functioning.  His own treating physician [Dr. Bodepudi] performed a cognitive test in May 2015 in which the claimant could name the current president and four ex-presidents, say five letters forward and backward, state four similarities and differences between an apple and an orange and he demonstrate[d] good memory skills.  His abstracting ability was fair.

(Id.)  These reasons are clear and convincing, and supported by substantial evidence the record.  (See AT 71, 91–92, 102–03, 326–31, 404, 605, 627–29, 757.)

What is more, the other evidence outlined above—regarding plaintiff's conservative and relatively successful treatment with medication and therapy—that is cited by the ALJ in his RFC determination, also contradicts Dr. Martin's opinion of moderate and marked limitations, and further bolsters the ALJ's rejection of Dr. Martin's opinion.  See Magallanes, 881 F.2d at 755 (a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion).

### iii.      **Drs. Moura and Koretzky – reviewing psychologists**

Drs. Moura and Koretzky are state agency medical consultants who each reviewed plaintiff's file and opined as to his mental RFC.  (See AT 125–26, 129–31, 142–43, 146–48.)  Plaintiff argues that the opinions of Drs. Maura and Koretzky ought not be afforded any weight, as these doctors only reviewed plaintiff's records and their opinions are inconsistent with the

opinions of Drs. Malek, Kahn, and Cribari. (ECF NO. 14-1 at 25.) The Ninth Circuit has held that "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). While Drs. Moura and Koretzky are psychologists and not physicians, this rule equally applies to their opinions.

Dr. Moura determined that plaintiff was able to work with restrictions. Specifically, plaintiff "was capable of understanding and remembering most tasks but due to interference from anxiety and depression he [wa]s limited to sustaining concentration, persistence, or pace for simple one to two-step and some detailed two to three-ste[p] tasks during a regular forty hour workweek." (AT 44, 131.) Dr. Moura also indicated plaintiff should have "minimal social contact, peripheral to tasks performed." (Id.)

The ALJ gave the majority of Dr. Moura's opinion great weight, as consistent with the evidence that plaintiff

> has depression, anxiety and social phobia [but] with medication and therapy he has been able to attend school and perform activities of daily living. He testified he goes to the grocery store and drives daily to get meals or attend appointments. However, Dr. Moura opined he was markedly limited in his ability to interact with the public and the undersigned finds this portion of Dr. Moura's opinion is not consistent with the record. Despite the claimant's social phobia, he reported in a function report he socializes when he goes to the store, attends school and when he participates in "rail fanning."[7]

(AT 50.) These observations are supported by substantial evidence in the record. (See AT 71, 91–92, 102–03, 326–31, 404, 442, 446–47, 450, 456, 605, 627–29, 757, 895–921.) Also, the ALJ need not give great weight to all of a single practitioner's findings, and he gave specific and legitimate reasons, supported by substantial evidence for discounting the social limitations opined by Dr. Moura.

Similarly, the ALJ gave great weight to the opinion of Dr. Koretzky, who "opined the claimant could interact superficially with the public . . . and can perform simple tasks and adapt to

---

[7] "Rail fanning" is a hobby which involves the watching of trains in the company of other hobbyists. (AT 49.)

routine changes." (AT 50, 147–48.)  The ALJ determined that this opinion was consistent with substantial evidence in the record, specifically referencing plaintiff's ability to secure housing and mental health services while homeless, as well as his college work.  (AT 50–51.)  As explained above, these conclusions are supported by evidence in the record.  Thus, the ALJ appropriately gave great weight to the decisions of Drs. Moura and Koretzky because he determined their opinions were consistent with and supported by substantial evidence in the record.  See Thomas, 278 F.3d at 957.

### iv.  **Ms. Devereux – vocational evaluator**

As Chief Vocational Evaluator for the California Department of Rehabilitation, Ms. Devereux performed a comprehensive vocational evaluation of plaintiff.  (See AT 500–08.)  Plaintiff alleges that the ALJ erred in not assigning Ms. Devereux's opinion greater weight than those of Drs. Moura and Koretzky.  (ECF No. 14–1 at 22–23.)  The Social Security Administration has clarified that opinion evidence from a vocational evaluator, such as Ms. Devereux is classified as a non-medical "other-source."  See 20 C.F.R. 404.1513(d) and 416.913(d).

> Information from these "other sources" cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an "acceptable medical source" for this purpose.  However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p (S.S.A. Aug. 9, 2006).  Generally, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case."  (Id.)

Ms. Devereux performed a battery of tests and observed plaintiff over 5 days.  (AT 500–09.)  She concluded:

> Don scored well on most academic measures, but had mixed performance results on tolerance tasks. . . . He was very quiet and kept to himself, but he was able to have a conversation, maintain eye contact, and be punctual.

11

> Overall, however, he demonstrated no major barriers that would definitely prevent him from engaging in some type of meaningful work. Therefore, it can be concluded that he is most likely a viable candidate for part or full time employment, training, or both.

(AT 508.) The ALJ concluded that Ms. "Devereux's opinion is supported by her evaluation results from numerous tests. Accordingly, the undersigned assigns her opinion some weight." (AT 50.) The ALJ properly weighed this opinion, and explained his reasoning.

To the extent that plaintiff argues that the ALJ did not properly address Ms. Devereux's findings that plaintiff can work upright only 40-78 minutes (ECF No 14-1 at 23; AT 502), and that plaintiff scored "much below average" on certain speech and accuracy tests (ECF No 14-1 at 23; AT 505), the ALJ did not commit any error. First, "there is a distinction between what an [ALJ] must consider and what the [ALJ] must explain in the disability determination." SSR 06-03p. The ALJ need not list out each factor he considered in his decision. Second, the ALJ reviews the medical record as a whole when crafting the RFC. The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

### v. Drs. Leeds and Hilton – treating physicians

Plaintiff argues that the ALJ erred by failing to weigh the opinions of Drs. Leeds and Hilton. (ECF No. 14-1 at 20.) Plaintiff refers to his own complaints that he cannot walk more than thirty minutes before experiencing pain, which were recorded in these doctors' progress notes. (Id.; see AT 539, 582.) As the Social Security Administration has explained "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [one's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). The medical notes cited here do not qualify as medical opinions, for the purposes of determining disability under the Act, because they do not indicate what plaintiff could still do

despite his alleged conditions.

Still, even if the ALJ erred in not explicitly weighing these so-called opinions, any error was harmless because, as explained in this order, the ALJ's RFC determination is nonetheless supported by substantial evidence in the record. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

vi.      **Drs. Fernando and Bermudez – examining physicians**

Plaintiff also argues that the ALJ erred in not giving weight to examining physicians Drs. Fernando and Bermudez. (ECF No. 14-1 at 20–21.) Drs. Fernando and Bermudez both opined that plaintiff was significantly limited physically in his ability to sit and stand during a workday. (See AT 517, 988.) After reviewing these opinions in context of the entire record, the ALJ concluded:

> While Drs. Bermudez and Fernando are examining physicians, their opinions are inconsistent with their findings and the medical evidence of record. Neither found substantial loss of range of motion of the lumbar spine or left hip. Imagining scans show no findings for the left hip but severe degenerative changes at the sacroiliac joint of the lumbar spine. Diagnosis was bursitis of the left hip for which the claimant was only prescribed medication, the typical palliative recommendations to use ice, heat, rest, and elevation, and take Ibuprofen for pain and inflammation. Accordingly, the undersigned assigns these opinions little weight.

(AT 53.) These conclusions are supported by substantial evidence in the record. While Dr. Bermudez opined limitations of plaintiff's ability for prolonged sitting, standing, and walking, her examination demonstrated that he had full range of motion in his upper extremities and back. (See AT 514–16.) She also noted that plaintiff could walk without difficulty and stand on his heels and toes. (AT 516.) Dr. Fernando's conclusions were similarly contradicted by his objective findings: plaintiff was able to get in and out of the chair without difficulty (AT 983); even though he complained of some discomfort in his lower back, range of motion was intact for forward flexion and extension (AT 984); he had normal straight leg testing, except for discomfort in his lower back and thighs (id.); there was tenderness to pressure and discomfort on abduction

13

and adduction in the left hip, but the rest of the range of motion was intact (AT 985); his knees,

ankles, and feet all exhibited normal range of motion (id.); he demonstrated good muscle tone

bilaterally with full (5/5) strength in all extremities (id.); his gait was within normal limits (id.);

and he was able to stand on his heels and toes and perform tandem gait (id.).

Moreover, other examinations in the record demonstrate normal range of motion, normal

strength, and mild to normal findings in the hip, as well as visits where plaintiff reported no pain.

(See AT 535–36, 542–43, 550, 577–78, 605, 646, 672.)  Indeed, in 2013, hip x-rays were normal

with no fractures or dislocations and an MRI of the hip showed only mild cam lesions.  (AT 537.)

Therefore, the ALJ provided specific and legitimate reasons, supported by substantial evidence in

the record, when rejecting the opinions of Drs. Fernando and Bermudez.

vii.      **Drs. Spellman and Eskander – reviewing physicians**

Plaintiff alleges that the ALJ erred in giving great weight to state agency reviewing

physicians, Drs. Spellman and Eskander.  (ECF No. 14-1 at 26–27.)  However, as explained, such

opinions may serve as substantial evidence when consistent with independent clinical findings or

other evidence in the record.  Thomas, 278 F.3d at 957.  Here, the ALJ concluded that

> Drs. Eskander['s] and Spellman's opinions are consistent with the record as discussed.  The claimant could sit for classes at college, perform basic activities of daily living, admitted to treating sources he could walk for thirty minutes in the park.  However, Dr. Spellman gave consideration to the claimant's pain complaints in opining the claimant should be limited to light exertional level work over medium exertional work.  The imaging scans and his diagnoses support the opinion.  Accordingly the undersigned assigns great weight to both opinions but more so to Dr. Spellman's opinion than to Dr. Eskander's opinion.

(AT 53.)  The medical evidence and daily activities discussed throughout support the ALJ's

conclusion here.  Additionally, the record demonstrates that plaintiff reported that he was able to

walk 30 minutes and then gets winded/tired.  (AT 582.)  Therefore, the ALJ appropriately relied

upon these opinions, as he found them to be consistent with the medical records and other

substantial evidence in the record.[8]

---

[8] Plaintiff also argues that the ALJ erred when reporting "that Dr. Eskander reviewed medical evidence from treating physician notes on May and August 2014" because no such notes exist.

14

1        2.      *Whether the ALJ failed to make a proper step three determination*

2        Plaintiff argues that the ALJ erred by not finding him disabled under listings 1.02, 12.04,

3   and 12.06.  (ECF No 14-1 at 29–34.)  The claimant "bears the burden of proving that . . . she has

4   an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the

5   Commissioner's regulations."  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

6        "For a claimant to show that his impairment matches a listing, it must meet *all* of the

7   specified medical criteria.  An impairment that manifests only some of those criteria, no matter

8   how severely, does not qualify. . . . For a claimant to qualify for benefits by showing that his

9   unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he

10  must present medical findings equal in  severity to *all* the criteria for the one most similar listed

11  impairment."  Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).

12       A determination of medical equivalence must rest on objective medical evidence.  See

13  Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on

14  medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical

15  equivalence must be based on medical findings. . . . A generalized assertion of functional

16  problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In

17  considering whether your symptoms, signs, and laboratory findings are medically equal to the

18  symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your

19  symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria.

20  However, we will not substitute your allegations of pain or other symptoms for a missing or

21  deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed

22  impairment.").  Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not

23  sufficient to sustain a finding of disability."  Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

24  Instead, all of the specified medical criteria must be met or equaled.  Id. at 1550.

25  _____

26  (ECF No. 14-1 at 26.)  It appears that the ALJ erroneously described Dr. Eskander's opinion (see
    AT 52), but this error is harmless.  The ALJ properly described Dr. Eskander's opinion later in
27  his decision (see AT 53) and the ALJ's RFC and weighing of evidence is otherwise supported by
    substantial evidence, as explained.  The minor error of partially mischaracterizing Dr. Eskander's
28  opinion does not undermine the validity of the ALJ's decision.

### i. **Musculoskeletal impairments (Listing 1.02)**

The ALJ determined that plaintiff's impairments do not satisfy the requirements of the relevant musculoskeletal listings because he "does not have involvement of a joint resulting in an inability to ambulate effectively or perform fine gross movements effectively." (AT 39.) To meet listing 1.02, a plaintiff must demonstrate an inability to ambulate effectively, which

> is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00b(1).

The ALJ's conclusion that plaintiff did not meet listing 1.02 is correct, as plaintiff has failed to satisfy his burden to demonstrate that he meets all the criteria of the listing, since he has failed to demonstrate an inability to ambulate effectively. The record does not demonstrate that plaintiff used even a single point cane, let alone "a hand-held assistive device(s) that limits the functioning of both upper extremities."

### ii. **Mental impairments (Listings 12.04 and 12.06)**

According to plaintiff, the opinions of Drs. Khan and Cribari support a finding that plaintiff meets listings 12.04 and 12.06. (ECF No. 14-1 at 31–32.) Yet, as explained above, these conclusory check-box opinions were properly rejected by the ALJ. All that remains to support plaintiff's arguments are his own subjective complaints of limitation. Thus, plaintiff has failed to provide sufficient evidence in the record to satisfy his burden to demonstrate that he meets or medically equals either listing. See 20 C.F.R. § 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

In any event, the ALJ analyzed each of the listing criteria required under 12.04 and 12.06, determining that substantial evidence in the record did not support a step three finding of disability. (See AT 40–41.) The ALJ's analysis was supported by substantial evidence in the record of plaintiff's daily activities and experiences in college, which are discussed above.

////

////

3.      *Whether the ALJ improperly discounted plaintiff's credibility*

Further, plaintiff argues that the ALJ did not provided clear and convincing reasons for discrediting plaintiff's subjective complaints of pain. (ECF No. 14-1 at 27–28.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ."  Molina, 674 F.3d at 1112.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of constant left hip pain, back pain, depression, panic attacks, and social phobia. Indeed, the ALJ provided limitations in plaintiff's RFC to address his physical and mental impairments.  (See AT 41.)  Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i.      **Objective medical evidence**

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).  Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d at 681.

The ALJ determined that the objective evidence undermined the credibility of plaintiff's subjective allegations of total disability.  (See AT 53.)  As detailed above, the objective evidence in the record demonstrates that plaintiff was not so significantly impaired mentally or physically that he would be unable to work.  Ms. Devereux's conclusion that plaintiff "demonstrated no major barriers that would definitely prevent him from engaging in some type of meaningful work" (AT 508) sufficiently summarizes the substantial evidence in the record, upon which the ALJ relied in assessing plaintiff's credibility and determining his RFC.

### ii.      **Conservative treatment**

Plaintiff's relatively conservative treatment was also a proper consideration.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Here the record demonstrates that for his mental conditions, plaintiff consistently received medication, which was generally effective and adjusted as necessary, as well as group and individual therapy.  (See AT 442, 446–47, 450, 456, 605, 895–921.)  For his physical conditions, plaintiff was prescribed medication, physical therapy, and "the typical palliative recommendations to use ice, heat, rest, and elevation, and take Ibuprofen for pain and inflammation."  (AT 53, 538, 544, 578, 585.)

### iii.    **Condition can be controlled with medication**

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).  Here, plaintiff reported to his medical providers that medication helped his depression and his depression was even noted to be in partial remission.  (See AT 442, 450, 456.)  Also, plaintiff reported only needing the anxiety reducing medication, Klonopin, twice per month.  (AT 446.)

### iv.    **Daily activities**

Substantial evidence supports the ALJ's finding that plaintiff's daily activities, which are detailed above, are inconsistent with his allegations of disabling symptoms and limitations.  (See AT 71, 91–92, 102–03, 326–31, 404, 605, 627–29, 757.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry,

work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Specifically, the record here demonstrates that plaintiff obtained "A" grades in college level mechatronics courses; he was able to interact with students and professors while in school; he lives alone; he can handle finances; he drives to school, appointments, and college; and he overcame being homeless, obtaining a housing voucher and entering into an agreement with a friend to stay in a camper in his yard.

To be sure, the record also contains some contrary evidence—such as plaintiff failing one of his college classes, feeling anxious, and having trouble making friends—suggesting that plaintiff's activities are more limited. (AT 838–39.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

4.   *Whether the ALJ erred in his step five determination*

Finally, plaintiff argues that the ALJ erred in his application of the medical vocational guidelines at step five. (ECF No. 14-1 at 34–35.) This argument is essentially a challenge to the sufficiency of the ALJ's RFC. It rests on the assumption that the ALJ erred by determining that plaintiff was capable of light work with some limitations, instead of being limited to only sedentary work. (See Id. at 35.) Yet, for the reasons stated, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, the

1  RFC is based upon substantial evidence in the record, and plaintiff's argument fails.

2      To the extent that plaintiff otherwise challenges the ALJ's step five determination, the

3  court finds no error.   The Ninth Circuit has explained that:

4          An ALJ may take administrative notice of any reliable job
           information, including information provided by a VE.  A VE's
5          recognized expertise provides the necessary foundation for his or
           her testimony.  Thus, no additional foundation is required.
6

7  Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  Importantly, the requirements

8  established in Federal Rule of Evidence 702, Daubert, and Kumho Tire do not govern the

9  admissibility of evidence in Social Security administrative proceedings.  Id. at 1218 n.4.

10  Therefore, unless the record on its face indicates that the VE's testimony was fundamentally

11  flawed, see Farias v. Colvin, 519 Fed. App'x 439 (9th Cir. May 20, 2013), the testimony

12  constitutes substantial evidence upon which the ALJ was entitled to rely.

13      Here, the ALJ's step five determination was based upon the testimony of the VE, who

14  considered plaintiff's age, education, work experience, and RFC, and concluded that jobs exist in

15  significant numbers in the national economy that plaintiff can perform.  (See AT 54, 112–18.)

16  Since the RFC was based upon substantial evidence, there is no basis to challenge the VE's

17  testimony as fundamentally flawed.  As such, the ALJ appropriately relied on the VE's testimony

18  when making his step five determination.

19  V.      CONCLUSION

20      For the foregoing reasons, IT IS HEREBY ORDERED that:

21      1.      Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

22      2.      The Commissioner's cross-motion for summary judgment (ECF No. 18) is

23              GRANTED.

24      3.      The final decision of the Commissioner is AFFIRMED, and judgment is entered

25              for the Commissioner.

26      4.      The Clerk of Court shall close this case.

27  Dated:  September 26, 2017

    14/ss.16-1500.raisor.order msj

28
                                                CAROLYN K. DELANEY
                                                UNITED STATES MAGISTRATE JUDGE

21